Morning. Good morning, your honors. My name is Philip Keefe. I'm counsel for Mr. Williams. This is the case of the Social Security Administration employee who was fired five years after the agency discovered that he had used Social Security numbers not obtained through his work or not obtained from the agency in order to commit tax fraud. There are broadly two issues which I'll talk about in detail in a minute. First is, is there substantial evidence that to support the MSPB judges' finding that the mission of the agency, of SSA, included safeguarding Social Security numbers in general in contrast to safeguarding them from being wrongfully obtained by employees by use of their access to the agency files. And the second issue is, if so, if there's a punishable offense at all, is there substantial evidence to support the judges' findings that support her conclusion that this charge was appropriate, including her finding that there was quote negative publicity about misuse of Social Security numbers by SSA employees and her findings about the seriousness of the offense. For purposes of the appeal, the basic facts are set out by the judge at appendix pages 6 and 7 and are not in dispute. In 2001, while working in the mailroom of the Social Security Administration, Mr. Williams was approached by a crook named Joel Edwards. Mr. Edwards said that he knew people with children who were not claiming those children as dependents on their tax returns. Mr. Keene, I think we're quite familiar with the facts. Maybe you can focus on the arguments you have with respect to nexus and the penalty. Absolutely. The administrative judge made it absolutely clear that she would not have found Mr. Williams' off-duty misconduct, she would not find it could be punished by the agency, but for her belief that quote the mission of the agency is the use and safeguarding of Social Security numbers. Was Edwards fired? I know he was still working at the time of the trial. He either was fired and reinstated or never fired. The record doesn't tell us what happened. I will check that before the rebuttal. There's a footnote in the judge's decision that discusses Mr. Edwards and finds it irrelevant as to the fact that he was still on the payroll is irrelevant to the question of how serious the offense was. Who testified that Edwards came back to work at the agency? Mr. Williams did and the judge credited that statement. Is that in the joint appendix? Yes, it is, Your Honor. Where? It is on page 10 of the footnote. I know where it is in the judge's opinion. Is the testimony in the appendix? No, it isn't, Your Honor. Is it transcribed? I assume so, yes, Your Honor. What the agency argues in its brief is that it is important to protect against employees improperly making use of information submitted in confidence by members of the public and obtained through the agency's file. And the agency argues in its brief that it must protect private information in the agency's possession. We agree that an SSA employee can be disciplined for using his or her access to agency files to obtain confidential information and then use that information for purposes other than carrying out their assignments. The judge expressly found that Mr. Williams didn't do this. So when she says she's upholding discipline because the agency mission includes safeguarding social security numbers, she's not referring to what the agency is talking about, which is safeguarding social security numbers from being compromised by agency employees misusing access to the social security administration files. She must be saying that the mission of social security administration extends to safeguarding against the type of misuse of social security numbers as occurs here. Let me tell you what I find troublesome about your argument. Why isn't it reasonable for the social security administration to say that a social security employee who would participate in this kind of a tax fraud, which includes using the social security numbers of two children who weren't his own children, that someone who is willing to do that is equally likely to compromise social security numbers protected status. At some future point someone comes to them and says I'll pay you $100 if you give me the numbers of these two people. What's unreasonable about the agency saying that's not the sort of person we want to have working for us? I think that's what the agency said, but we're at the Court of Appeals seeking review of a decision by an administrative judge of the MSPB, and she didn't uphold the discipline on that basis. She believed that what happened here directly interfered with carrying out the agency mission as she understood it, and she thought that the agency mission included ensuring that people don't use, whether employees or not, don't use social security numbers when they commit tax fraud. It's an implicit distinction here. If Mr. Williams had engaged in the run of the mill tax fraud, that is claiming he gave $2,000 to his church and taking a deduction when in fact he only gave $500, according to the judge's rationale here, that's not a firing fence at social security. There's any number of things people can do that reflects on their honesty, and that's not the philosophy of the judge here. But that's not the case we're dealing with. That's correct. Because in this case social security numbers were used, and were used improperly. Yes, sir. So it's hard to argue that there isn't some connection. Some mission? Some connection with the mission of the Social Security Administration. Well, again, we're seeking judicial review on the basis of substantial evidence to support findings. The judge doesn't, obviously there's nothing in the agency's statutory mission, and there's nothing implicit, at least the judge doesn't say, what's implicit in the mission. For example, we agree that implicit in the Social Security Administration's mission is the ability to ensure confidentiality, as the agency properly argues. But what happened here has nothing to do with confidentiality. Well, how can you say it has nothing to do with confidentiality when he was participating in a tax fraud in which numbers were used to, someone else's social security numbers were used to get a tax refund. Because... We know, it's all over the papers every day about identity theft. It's a serious problem. And identity theft, generally speaking, involves taking someone else's social security number. And I don't see how you can say that there's no connection here. Well, first of all, it's focused on confidentiality, which we all are entitled to rely on the Social Security Administration to keep its records confidential. That didn't happen here. That was not the offense. It's a question of whether it happened or whether someone who has done what your client has done is likely to do it in the future. That's the question. Well, no, because that's not what Judge Milligan found. She didn't rely on that for finding a relationship between this off-duty misconduct and the mission of the agency. That isn't what she found. She found that, in some sense, the Social Security Administration has a... Part of its job is to make sure people don't use or misuse social security numbers in general. Well, you don't question, as I understand it, that Social Security has an obligation to keep confidential social security numbers and records. You don't question that. I do not question that at all. It just seems to me that this is a case in which Social Security said someone who has done what he has done involving the use of these two children's social security numbers to get a tax refund that he wasn't entitled to is likely, in the future, to reach this confidentiality. I don't see why that isn't a legitimate basis for discharging. Well, it might have been, Your Honor, but a fundamental rule of administrative law is that an agency, in this case the MSPB, decision can be upheld only on the basis articulated in the decision itself, not on the basis of alternative rationales. And all the judge said here, that argument was made to her, she didn't adopt it. What she said here was that this is an offense, what he actually did, not what we predict he'll do in the future, interfered with the mission of the agency. And that's either supported by evidence or it isn't. And if the mission of the agency did include making sure that tax fraud does not involve claiming extra dependents, the social security numbers were not the essence of the fraud. What happened is this Mr. Edwards obtained the names and social security numbers of these children because the tax form requires both names and social security numbers. This isn't social security fraud, this is not failing to pay your social security taxes or that sort of thing. Arguments can be made, but we're here with Judge Milliken's decision that says the mission of the agency includes not just keeping its records confidential. There isn't any confidentiality issue in this case at all. There's no accusation of impairing anybody's confidential information. That's just not what the case is. And that's our argument. Even if the administrative judge's decision is that the mission of the agency is to safeguard social security numbers in the database that is maintained by the agency, isn't there a nexus here to the extent that his use of these social security numbers obtained from other sources nonetheless raises questions about his trustworthiness, raises questions about the appropriateness of having him in a position to gain access to this database? Yes, they fire him five years after they discover this. During that five year period they move him from the mail room where he did not have access to these databases into a regular social security position. They trust him for five years and he doesn't betray that trust. But doesn't the agency contend that they were not aware of his direct involvement? No, they do not contend that. I thought his supervisors only found out about it approximately eight months before he was removed. Isn't that correct? Yes, if the respondent were his immediate supervisors, if that's how the system worked, that would be relevant. The Social Security Administration, their policing function, the folks who are in charge of ensuring against breach of confidentiality, knew it five years before, they chose, for whatever reason, to not... When you say the Social Security Administration, I mean that's some vague entity that's listed and studied in school and so on, but the Social Security Administration is composed of individuals, and the individuals who are in charge of this man's work didn't know about it, even though maybe somebody else somewhere knew about it. Well, it wasn't maybe somebody else. The Office of Inspector General knew about it. Is there any indication they informed his superiors? I suspect, Your Honor, that the superiors changed over this five or six year period. No, they didn't. They chose, apparently they chose when the Baltimore Sun ran a newspaper article. That was on March 9th of 2007. Then, somebody told somebody and they decided to fire him. They initiated the process on March 12th, and that's their story, is that they moved against Mr. Williams when there was a newspaper article. That goes to the credibility of did they in fact infer, somebody in Social Security Administration infer, from the fact of this tax fraud that he couldn't be trusted with Social Security data. If the theory were that someone who does something dishonest is substantially more likely to do something dishonest in the future, then we would be firing people for adultery. Cheating on a spouse is a very serious offense that goes to the heart of somebody's integrity. Nobody argues that that type of dishonesty, even though you have a logical connection between dishonesty here and dishonesty there, that that's a sufficient connection to the work of the agency to justify a discharge. The other point that we're making is that the Baltimore Sun article that they relied on, which triggered the discharge, and that the judge relies on, the judge says there's notoriety in the sense that the newspaper article said that Social Security employees using Social Security numbers committed tax fraud. And we say in our opening brief, there's no evidence to that. The agency says in its brief, well, look at I think it's page 65 of the appendix, which is something about the newspaper article. Nothing in there about Social Security numbers. You're well beyond your full allotted time, but I'll restore two minutes of rebuttal. Let's hear from the other side. Thank you, Your Honor. May it please the Court. There are only two issues before the Court. Let me tell you what my problem is, Mr. Sharp. And it's with footnote three of the administrative judge's decision at page 810, and that is the treatment of evidence. And I don't know exactly what the record reflects as to the treatment of Edwards. Maybe you can enlighten me on that. But Edwards was the mastermind or moving force in this. And if, in fact, he was never fired by the agency or was rehired, why isn't that relevant at least to the penalty that should be imposed on Williams? There's little relevance to be given to that fact, Your Honor. What is in the record, as the administrative judge noted in footnote three, was that Mr. Edwards was at some point rehired by the agency. That's Mr. Williams' testimony. Well, I find that shocking that Edwards would be rehired and Williams would be fired. How are those two things consistent? They are consistent, Your Honor. How? What is not in the record before this court but was known to the parties at the administrative proceedings is Mr. Williams and Mr. Edwards had the same attorney during the proceedings. It's what happened. Again, this is on page 130 of the transcript, page 195 of the joint appendix, is Mr. Williams' attorney says, what about Mr. Edwards? And he says, oh, yeah, Mr. Edwards was rehired. Therefore, this must not be a big deal. Again, this is Mr. Williams' testimony. Well, is it conceded that Edwards was rehired? That was Mr. Williams' testimony, Your Honor. Well, I didn't ask you whether it was someone's. Do you agree that Mr. Edwards was rehired or do you question it? Mr. Edwards regained his position. Sorry for taking issue. The word rehired isn't technically accurate. What happened is that the agency removed Mr. Edwards from his position upon finding out about this investigation and the initial determination of the U.S. Attorney's Office not to bring charges against Mr. Edwards. What happened is that the U.S. Attorney's Office changed gears and decided to bring criminal charges against Mr. Edwards. He was indicted, wasn't he, Mr. Edwards? He was. He was indicted, but not initially, Your Honor. Well, what did he do? Did he plead or was he acquitted or what? He pled guilty in 2007, in March 2007. He was convicted of a criminal charge relating to this, right? Yes, Your Honor. So why was he rehired? He was retained, Your Honor, because of the agency policy. What agency policy? As explained by Mr. Volan, the agency investigator, that the agency policy is while criminal proceedings are underway. Well, that doesn't prevent you from firing him after he's convicted, does it? Sorry for the misapprehension. Is that correct? He was not rehired after his conviction, so sorry for the confusion. And this is Mr. Williams' testimony as well, again on page 30. Mr. Edwards was... Is Mr. Edwards currently employed by the agency? He's not, Your Honor. He is not? He is not. And when was his employment terminated? Within 24 to 48 hours of him pleading guilty. He came in and voluntarily resigned. He retired voluntarily. He did. So he was retained, as you say. Is this a policy to apply an indefinite suspension where someone is suspected or charged with a criminal offense? Is that what the agency did? They placed him on indefinite suspension pending the outcome of the criminal proceeding? No, Your Honor. The agency policy is to not commence or follow through with administrative proceedings regarding to employment during the pending of a criminal investigation. All of this is not shown by the record before us. Is that correct? It's indicated by the record, Your Honor. Indicated is... That means you've got to interpret it. Does the record show all of the facts that you've been telling us about what happened? It does not, Your Honor. What I wonder is whether, if in fact, after he had been convicted, they then rehired him, that would suggest disparate treatment, and should we perhaps send the case back to the board to develop all the facts on this, and then on the basis of those facts, determine what happened. As I recollect, all of the administrative judges in one sentence have referred to this and said, well, that's a different case. And that's not a very satisfactory distinction as far as I'm concerned. I agree it's a different case, and on its face, the case for keeping someone seems stronger for Mr. Williams than for Mr. Edwards. But now you tell us that Mr. Edwards is no longer employed by the agency. Yes, Your Honor. But he retired? He did, Your Honor. He wasn't fired? He was removed once, in 2002. And how did he get back? Because the criminal proceedings commenced again. So he was removed, and then criminal proceedings were commenced, and he was rehired? He was rehired because the criminal proceedings recommenced? What kind of agency policy is that? There's a few questions. The agency policy, Your Honor, is that during the penalty… Was he rehired because he was charged? Yes, Your Honor. Rehired is not technically accurate. The removal proceedings, which were in the midst of administrative proceedings, the removal was rescinded. Let's forget these technical terms and just find out. I take it, after he was indicted, he was removed, is that right? Prior to his indictment. Prior to his indictment, when they found out about it, he was removed, and he was removed from the payroll, is that right? He was, in effect, colloquially, he was fired. Is that accurate? Yes, Your Honor. And then it's not clear to me, having been fired, how did he get back? It would seem to me if he was fired, that would have been the end of it. Mr. Edwards challenged that through the administrative proceedings. In the midst of those challenges, the U.S. Attorney's Office reconsidered his decision and decided to again charge Mr. Edwards. So he was rehired because he was criminally charged. Yes, Your Honor. In terms of but-for causation, that's true. His removal was rescinded when the criminal charges commenced. Yes, Your Honor. Well, the criminal investigation into his charges, yes. But this is the primary question, and this goes back to the initial question that began this discussion, which is what relevance should be given to Mr. Edwards, to that fact? What relevance should be given, I suppose, depends upon what actually happened. If, in fact, as the administrative judge seems to suggest, Mr. Edwards, despite his criminal conviction, was restored to duty, was rehired, and Mr. Williams, who was less culpable, was fired, that would seem like the most extraordinary kind of discrimination. The agency treats a convicted criminal easier than it treats someone who was not charged. Respectfully, Your Honor, that's not quite correct. Mr. Edwards did not work for the agency post his conviction. The record doesn't show that, does it? No, Your Honor. What exactly did Williams testify to? That's the only record we have. What did Williams say? Williams said, I know that Mr. Edwards was rehired. That's it, which also indicates that at one point Mr. Edwards wasn't working there, because, again, he was removed. So why don't we have to, as Judge Friedman says, why don't we have to send this back to have a record developed as to what actually happened, so that perhaps if what you say is correct and that is established on the record, maybe there wasn't disparate treatment, since ultimately, according to you, Edwards was fired. But we don't know that from the record. All we know is that at some point he was rehired. And why doesn't the administrative judge have to consider that and consider whether that created a disparate treatment situation? It's not necessary for that consideration here, Your Honor. And the reason is because what's reflected in the record, again, is simply that he was rehired. So the relevance to be given to that fact must be weighed with all of the other Douglas factors. The problem is the administrative judge refused to take that into account. He said, I don't need to take it into account, because they didn't have the same supervisor. That's footnote 3, Your Honor. Yeah. In other words, he refused to consider it. Are you suggesting that if Edwards was rehired and remained on the payroll to this day, that that could be ignored by the administrative judge? Ignored, perhaps not, Your Honor. If Mr. Williams' defense was that these employees had similar positions at the agency or that somehow their jobs were similar or, again, that their function was similar, then this would be a more controlling factor. Again, one of those factors. But those issues were not examined. Because this was a defense raised by Mr. Williams. Because Mr. Williams raises this in his testimony, we know Mr. Edwards was rehired. Well, so what? I mean, you know, if you wanted to illuminate that and say, well, he was only rehired temporarily or he was gone or it's a different situation, you should have done that. But you didn't put anybody on to testify to that, did you? We did not because it's not necessary, Your Honor. Why not? Because, again, primarily it's one of many factors. Secondly, there was no evidence that they were in similar situations. Again, all that is known is that at some point this employee was rehired. There's no finding that we heard under what circumstances. Yeah, they're not in similar situations. It looks as though Edwards was more culpable than Williams. And you're saying it's okay to treat them different. Perhaps they're situated differently. And that's not what I'm saying, Your Honor, respectfully. Our position is that that is one of the factors to be considered by the judge. The fact in the record is Mr. Edwards was rehired. The weight and significance to be given that fact was considered. Here there was no showing a similar circumstance. Is there any evidence in the record as to what chain of command Mr. Edwards was in, what supervisor he had compared with Mr. Williams? The Administrative Judge's finding indicates, I believe, Your Honor, in footnote 3, that there were different supervisors. I don't recall that. I realize that's the conclusion in footnote 3. My question is, is there any evidence to support that? Was there anything in the record that the Administrative Judge considered to reach that conclusion? Yes, Your Honor. What it is is that it was the testimony of Mr. Williams' supervisors because Mr. Williams' attorney asked all of them, and this is the evidence, Your Honor, what about Mr. Edwards? And they said, we don't know. We don't know what happened to Mr. Edwards. He wasn't within their relative books. Didn't they have to make a testimony with respect to who his supervisor was and what the chain of command was? There was not, only that he was situated differently than Mr. Williams. I'm confused. You're saying there was no evidence about who his supervisor was or what the chain of command was, but somehow there was evidence that he was not similarly situated? Yes, Your Honor. What evidence was that, that he was not similarly situated? It was the evidence by Mr. Williams' supervisors that they were not in charge of Mr. Edwards, that they knew nothing about Mr. Edwards, that they played no role in his employment process, and they knew nothing about him. And by virtue of that, Mr. Edwards and Mr. Williams had different jobs at the agency. And again, this was a defense raised by Mr. Williams, and there was no attempt to show that those two individuals were similarly situated. So that factor, again, and this is the primary question, Your Honor, which is, what relevance is to be given to this fact? It's minimal, if any. For one, what actually happened... Just because they have different supervisors? Because there's no demonstration that their employment capacities are similar,  Yeah, but the record doesn't reflect that. No, what the record reflects is that he was rehired. That small fact that he was rehired. Well, it's not necessarily a small fact, is it? It's certainly not a small fact to Mr. Williams. But the question is, what relevance to be given that fact? Well, you said Mr. Edwards was rehired. Is that right? Yes, Your Honor. Well, suppose we were to affirm in this case that Mr. Williams reapplied for work. Would he be rehired? No, Your Honor. There are not criminal proceedings underway involving... So there is some relevance, it seems to me, when the person who is more culpable is rehired, and the person who is less culpable is fired and not rehired. I don't know what the facts are because the record doesn't show all of the facts. But it seems to me that at least on its face, there's some troubling aspects here of how this man was treated. I mean, I have no doubt personally that he could have been removed that he could have been removed for what he did. But the question is, has he been treated fairly? It just doesn't look right to me. I don't know. It may be that if all the facts were developed, it would turn out there's been nothing wrong here. But I don't know. It sounds to me like if Mr. Edwards' criminal case had resulted in an acquittal, that he probably would still be there working for the agency. Is there anything to suggest that that's not the case? I'm out of time. May I respond? Yes, please. There is, Your Honor, and this also goes to Judge Friedman's concerns. Because Mr. Edwards was removed after the agency found out about this and after the U.S. attorneys chose not to take action. So it's undisputed that the agency took this conduct seriously. No, it's not undisputed. It's not in the record. It's in the record that Mr. Edwards was removed because it's in the record that he was rehired. Yes, but there's nothing in the record to suggest that he was removed again or that he doesn't work there now. May I respond? Please. Nor need there be, because only in the record is this isolated fact. So the question is, what weight to be given that fact? And given that there isn't anything else in the record about it other than that fact, consideration of the moral documents... Let me say, I would infer from a statement that he was rehired and that's all that is said, that he's still there. That would be the normal inference that I think most people would draw from being told he was rehired. Not that he was rehired. You know, technically I suppose he would be rehired at 9 a.m. and removed at 9.01 a.m. But I don't know what happened. I don't know what the time lag was. I know nothing about it. And I take it the record doesn't show what happened. The record does not. Because it was this defense thrown out by Mr. Lewis. Well, is your argument basically that we shouldn't get into any of these questions about his rehiring because that was not the argument he made before the board? Is that your argument basically? That's not the argument, Your Honor. This idea that supreme weight should be given to this one factor when all of the other factors of the Douglas factors weigh in favor of removal. Well, but you've got a further complication in the case, don't you? That the person who actually removed him, made the decision to remove him, thought it was mandatory. And the administrative judge said, well, I can't give any weight to the decision to remove him because the removing officer official thought it was mandatory. And it's not mandatory. There is an element of discretion. You've got all of those factors to consider, et cetera, et cetera. Respectfully, Your Honor, that's not a problem. Pardon? Respectfully, Your Honor, that's not a problem in this case. The testimony from the deciding official was that he considered all the Douglas factors and that based upon a consideration of all those factors, and a total diminishment of the trust the agency had in Mr. Williams or Mr. Edwards to function as a member of this administration caused him to have no choice but to remove Mr. Williams. He testified that he thought Standard 3 also gave him no choice. But that distinction is minor because he came to the decision independent of Standard 3. That will be the final word. Thank you, Mr. Schock. And we'll hear briefly from Mr. Keith. The testimony of Mr. Williams is at pages 195 and 196. I think there are two colloquies. What happened, regardless of the details, what happened to Mr. Edwards contradicts the suggestion that the agency believes and acts on the belief that someone who commits this type of fraud is so highly likely to commit the different offense of breaching confidentiality as to justify not having that person on the payroll. It would be different if they had a consistent policy. All we know for sure is that they knew what Mr. Edwards did and they consciously decided that he could be an SSA employee, and a minimum that eliminates the thought that Mr. Williams' discharge can be upheld because of the agency's alleged belief that he was highly likely to commit a different offense, the offense of breaching confidentiality. I thank you, Your Honors. Thank you. Thank you. The case is submitted.